```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF OHIO
                               EASTERN DIVISION
```

**TERESA L. SIMPSON,**

        **Plaintiff,**

  vs.                                        **Civil Action 2:14-cv-1372**
                                                    **Judge Frost**
                                                    **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

      This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is before the Court for consideration of *Plaintiff's, Teresa L. Simpson, Statement of Errors* ("*Statement of Errors*"), Doc. No. 14, and the Commissioner's *Memorandum in Opposition*, Doc. No. 15.

**I.    Background**

      Plaintiff Teresa L. Simpson filed her applications for benefits on May 16, 2012, alleging that she has been disabled since April 7, 2003.  *PAGEID* 54, 279-91.  The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      An initial administrative hearing was held on September 24, 2013, at which plaintiff, represented by counsel, appeared and testified.  *PAGEID* 104-14.  That hearing was continued to permit plaintiff to

obtain additional medical evidence.  *PAGEID* 109-14.  A supplemental hearing was held on February 11, 2014, at which plaintiff, represented by counsel, appeared and testified, as did Jerry A. Olsheski, Ph.D., who testified as a vocational expert.  *PAGEID* 87-103.  In a decision dated March 4, 2014, the administrative law judge concluded that plaintiff was not disabled from April 7, 2003, through the date of the administrative decision.  *PAGEID* 54-76.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2014.  *PAGEID* 37-39.

Plaintiff was 41 years of age on the date of the administrative decision.  *See PAGEID* 76, 279.  She has at least a high school education, is able to communicate in English, and has past relevant work as a warehouse worker.  *PAGEID* 74.  Plaintiff was last insured for disability insurance purposes on December 31, 2008.  *PAGEID* 56.  She has not engaged in substantial gainful activity since April 7, 2003, her alleged date of onset of disability.  *Id*.

## II. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine at L4-5 and L5-S1, accompanied by a small disc herniation at L4-5; a major depressive disorder, with anxiety; and a post-traumatic stress disorder.  *PAGEID* 56.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  Specifically she can lift and carry 50 pounds

>     occasionally and 25 pounds frequently, and sit, stand, and
>     walk for six hours each in an eight-hour work day. She
>     retains the capacity to understand, remember, and carry out
>     simple to moderately complex tasks and instructions. She
>     retains sufficient attention to complete such tasks for two
>     segments throughout an eight-hour work day. She further
>     retains the capacity to respond appropriately to
>     supervisors and coworkers, adapt to simple change, and
>     avoid hazards in the work place.

*PAGEID* 64-68.  Although this RFC precludes the performance of plaintiff's past relevant work as a warehouse worker, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as hand packer, packing and filling machine tender, and cleaner.  *PAGEID* 74-75.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 7, 2003, through the date of the administrative decision.  *PAGEID* 76.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y*

*of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues, first, that the administrative law judge erred in evaluating the medical opinions of record.  Plaintiff argues that the administrative law judge erred "in refusing to give controlling weight or at least great weight" to the July 8, 2003 and July 6, 2004 opinions of Gregory Fisher, M.D., to the December 17, 2003 opinion of Robert Turner, M.D., to the March 30, 2005 opinion of R. Earl Bartley, M.D., to the January 20, 2006 opinion of William Reynolds, M.D., and to the August 14, 2012 opinion of David Rudy, M.D.[1]  *Statement of Errors*, pp. 7-11.  According to plaintiff, it was error for the administrative law judge to discount these opinions

---

[1] Both the administrative law judge and plaintiff refer to Dr. Rudy's opinion as the opinion of Julie Rutledge, M.D.  *See Statement of Errors*, p. 10; *PAGEID* 73.  However, the opinion cited by plaintiff and the administrative law judge was authored by Dr. David Rudy.  *See PAGEID* 670-77.

4

and, by doing so, the administrative law judge improperly "substitut[ed] his own opinion." *Id*. at pp. 10-11.

Dr. Fisher evaluated plaintiff on July 8, 2003, in connection with an injury sustained by plaintiff in the workplace on October 12, 2002. *PAGEID* 365-68. On examination, Dr. Fisher noted very mild tenderness/pain on palpation of the low back area. *PAGEID* 366. Plaintiff had a normal gait, straight-leg raising was negative, sensation of the lower extremities was intact, motor power was 5/5 over the lower extremities, Faber tests were negative bilaterally, and plaintiff manifested no obvious distress. *Id*. Dr. Fisher opined that plaintiff had not reached maximum medical improvement and recommended additional treatment, including physical therapy, aquatherapy, a home-exercise program, and anti-inflammatory medications and muscle relaxants. *PAGEID* 367. Dr. Fisher also opined that plaintiff could not return to her former position as a general laborer or warehouse person because of her back condition, but that she would likely be able to return to work in the future with limitations on lifting and carrying up to 30-40 pounds with no repetitive movements such as bending, stooping, or twisting. *PAGEID* 368.

Dr. Turner evaluated plaintiff on December 17, 2003. *PAGEID* 370-72. On examination, Dr. Turner noted that plaintiff did not appear to be in distress while at rest. *PAGEID* 371. Plaintiff had "good segmental motion," no atrophy of the thigh, no motor loss, negative straight leg raising and normal alignment of the lumbar spine; she ambulated without difficulty. *Id*. Dr. Turner commented that

5

plaintiff had not reached maximum medical improvement but believed that she would likely do so within three months. *Id*. According to Dr. Turner, plaintiff could not return to her previous employment because lifting 80 pounds to shoulder level would "be very difficult for her to do." *Id*. Dr. Turner also opined that plaintiff would be "unable to lift more than 20 lb. on a regular basis; she is unable to bend or stoop repetitively." Based on plaintiff's reported symptoms, Dr. Turner believed that "returning to work with restrictions is not a reasonable goal." *Id*. Dr. Turner further opined that plaintiff "would certainly be a candidate for vocational rehabilitation." *PAGEID* 372.

Dr. Fisher evaluated plaintiff for a second time on July 6, 2004. *PAGEID* 373-76. On examination, Dr. Fisher noted positive straight leg raising on the left, complaints of mild discomfort and pain in the low back area with palpation, motor power of 5/5, and decreased sensation over the lateral aspect of the left thigh and calf area. *PAGEID* 374-75. According to Dr. Fisher, plaintiff had not reached maximum medical improvement for her 2002 back injury but she could not return to her former work as a general laborer. *PAGEID* 375. Dr. Fisher also opined that plaintiff could do "light duty status work" and that she should avoid repetitive bending at the waist, stooping, kneeling, and twisting activities of the back. *PAGIED* 375-76. He opined that plaintiff "should not be lifting or carrying objects over 15 pounds," "should not be climbing stairs or ladders repetitively," and could

6

stand and walk for one to two hours and sit for four to five hours during an eight-hour workday. *PAGEID* 376.

Dr. Bartley evaluated plaintiff on March 30, 2005. *PAGEID* 382-83. On examination, Dr. Bartley noted an antalgic gait, tenderness in the low back at L4-S1 and from left to right at the SI joint, weakness in the left leg, decreased sensation at the L4-S1 dermatome, negative straight leg raising, and a normal Babinski. *PAGEID* 382. Dr. Bartley characterized the exam as consistent with mild radiculitis. *PAGEID* 383. Dr. Bartley commented that plaintiff had not reached maximum medical improvement and recommended a trial of epidural steroid injections followed by physical therapy. *Id*. He opined that plaintiff could not return to her former job because it required significant lifting. *Id*. "Current work restrictions would be sedentary work with a lifting maximum of 10 pounds with limited overhead lifting. She is able to sit for four to six hours per day with walking of one to two hours. No squatting, kneeling, or crawling." *Id*.

Plaintiff was examined by Dr. Reynolds on January 17, 2006. *PAGEID* 419-20. On examination, plaintiff had normal station and gait, some tenderness in the lumbosacral area, equal deep tendon reflexes at the ankles and knees, no measurable calf atrophy, no weakness of the great toe extensors, negative Patrick's test, negative straight leg raising, and no Babinski sign. *PAGEID* 419. According to Dr. Reynolds, plaintiff had reached maximum medical improvement and was unable to return to her "former position of employment where she [was]

7

required to lift 70-80 pounds" because she had a lifting limitation of 10 pounds. *PAGEID* 420.

Plaintiff was evaluated by Dr. Rudy on August 14, 2012. *PAGEID* 670-77. On examination, Lasegue test and straight leg raising was positive on the left and plaintiff's gait was "basically normal." *PAGIED* 671. Knee jerk was "about 2+" on the left and 4+ on the right. *Id*. Dr. Rudy diagnosed lumbar radiculopathy with intermittent sensory deficit, severe low back pain aggravated by brief periods of standing and walking, horseshoe kidney (which does not qualify as a basis for disability in the urinary system), unexplained urinary incontinence, vascular headaches, and carpal tunnel syndrome which does not involve serious debility of grip but which causes morning hypesthesia of the fingers in the median nerve distribution. *PAGEID* 672. Dr. Rudy opined that plaintiff

> has disability due to her radiculopathy involving the left lumbar region more than the right which appears to be mainly L4-5 but also some characteristics of S1. The L4-5 has resulted in a decreased knee jerk. There are no pathologic reflexes. The ankle jerks were brisk. She has a social disability with urinary incontinence but has not been properly evaluated or diagnosed and it is doubtful that it would be due to pelvic relaxation with only one pregnancy with vaginal delivery. Migraine headaches are doubtful as to a source of true disability and they may even satisfy the criteria for migraine but would be rather called vascular headaches. She cannot occupy a job which calls for her to be on her feet indefinitely or to walk indefinitely. She could do sedentary work. She could not lift more than 25 pounds and could not carry it more than about 50 yards.

*PAGEID* 671-72.

Plaintiff refers to Dr. Fisher, Dr. Turner, Dr. Bartley, and Dr. Reynolds as treating sources and characterizes Dr. Rudy as a

consultative examiner. *See Statement of Errors*, pp. 7-11. All of these doctors, however, were consultative examiners and are properly classified as nontreating sources. *See* 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."); PAGEID 367 (Dr. Fisher stated that his July 2003 exam was "an orthopedic independent medical evaluation" for the Bureau of Workers' Compensation); PAGEID 370 (Dr. Turner evaluated plaintiff at the request of the Bureau of Workers' Compensation); PAGEID 382 (Dr. Bartley provided an "independent medical examination"); PAGEID 420 (Dr. Reynolds stated: "I have not provided care for this patient. I have seen this patient one time for the purpose of evaluating medical impairment."); PAGEID 672 (Dr. Rudy stated: "The claimant understood that no doctor/patient relationship was implied or stated.").

With regard to nontreating sources, the Commissioner's regulations provide that the agency will simply "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). In evaluating the opinions of nontreating sources such as Drs. Fisher, Turner, Bartley, Reynolds, and Rudy, an administrative law judge should consider such factors as "the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of*

9

*Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)).

The administrative law judge expressly considered the July 8, 2003 and July 6, 2004 opinions of Dr. Fisher, the December 17, 2003 opinion of Dr. Turner, and the March 30, 2005 opinion of Dr. Bartley, but determined that these opinions could not be "assigned any significant weight." *PAGEID* 72-73. According to the administrative law judge, these opinions were "intended as an assessment of the claimant's status for only a finite period of time during the claimant's convalescence from her original work-related injury" and the "evidence fails to document that [the doctors'] limitations were intended to be permanent restrictions." *Id*. The administrative law judge also found that the limitations opined by Dr. Fisher, Dr. Turner, and Dr. Bartley "still permitted the claimant to engage in a range of work, which is consistent with the finding reached in this decision." *Id*. The administrative law judge provided specific reasons for discounting the opinions of Dr. Fisher, Dr. Turner, and Dr. Bartley, and those reasons are supported by substantial evidence.

The administrative law judge also considered the January 20, 2006 opinion of Dr. Reynolds and assigned it partial weight. *PAGEID* 73. The administrative law judge assigned significant weight to Dr. Reynolds' "opinion that the claimant is unable to return to her past relevant work," but did not afford any weight to Dr. Reynolds' opinion that plaintiff would be limited to lifting only 10 pounds. *Id*. In this regard, the administrative law judge explained that "it

10

appear[ed] that Dr. Reynolds relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant, and that he uncritically accepted as true most, if not all, of what the claimant reported." *Id*. The administrative law judge also considered the August 14, 2012 opinion of Dr. Rudy, but assigned that opinion no significant weight for the same reasons that he discounted Dr. Reynolds' opinion. *Id*. The administrative law judge also found that Dr. Rudy's opinion was inconsistent with other credible opinion evidence of record. *Id*. The Court finds that the administrative law judge's reasoning for discounting the opinions of Dr. Reynolds and Dr. Rudy is supported by substantial evidence. It is evident from the opinions of Dr. Reynolds and Dr. Rudy that both doctors relied on plaintiff's subjective complaints in forming their opinions. *See PAGEID* 419-20, 670-77. Moreover, Dr. Rudy's opinion is inconsistent with the opinion of Elizabeth Das, M.D., who opined that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently and could stand/walk and sit each for about six hours in an eight-hour workday. *PAGEID* 171-73.

 Plaintiff argues that, by discounting the opinions of Dr. Fisher, Dr. Turner, Dr. Bartley, Dr. Reynolds, and Dr. Rudy, the administrative law judge "substitut[ed] his own opinion" for that of the medical opinions. *Statement of Errors*, p. 11. This Court disagrees. This is simply not a case in which the administrative law judge interpreted raw medical records without the assistance of medical opinions regarding a claimant's abilities. *See Deskin v.*

11

*Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). Rather, the administrative law judge was called upon to evaluate the various and in some respects conflicting medical opinions and to determine the weight to be assigned to each. The administrative law judge properly engaged in this process and his findings in this regard enjoy substantial support in the record.

Plaintiff next argues that, in light of these medical opinions, she is "not completely sure where the ALJ found that the Plaintiff could perform medium work." *Statement of Errors*, pp. 10-11. It is clear, however, that the administrative law judge expressly adopted the opinion of Dr. Das, who opined that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently and stand/walk and sit each for about six hours in an eight-hour workday. PAGEID 171-73.

In her *Statement of Errors*, plaintiff next argues that the administrative law judge erred in finding that plaintiff's "mental impairment does not meet or medically equal the criteria of listings 12.04 and 12.06." *Statement of Errors*, pp. 11-13. Listing 12.04 applies to affective disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04. To satisfy the requirements of Listing 12.04, a claimant must meet the "paragraph A" and "paragraph B" requirements or the "paragraph C" requirements of the listing. *Id*. Listing 12.06 applies to anxiety related disorders where "anxiety is either the predominant disturbance or it is

12

experienced if the individual attempts to master symptoms." *Id*. at § 12.06. In order to meet Listing 12.06, a claimant must satisfy the requirements of "paragraph A" and "paragraph B" or "paragraph A" and "paragraph C" of the listing *Id*. In order to satisfy the "paragraph B" criteria for either listing, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See id*. at §§ 12.04, 12.06. "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*. at § 12.00(C)(4).

The administrative law judge dedicated three pages of his decision to the evaluation of Listings 12.04 and 12.06, but found that the severity of plaintiff's mental impairment does not meet or medically equal the criteria of either listing. *PAGEID* 65-68. In evaluating the paragraph B criteria, the administrative law judge found that plaintiff has mild restriction in activities of daily living, no difficulties in social functioning and moderate difficulties in concentration, persistence, or pace; she experienced no episodes of decompensation of extended duration. *PAGEID* 65-67.

Plaintiff appears to argue that she meets Listings 12.04 and 12.06 because she satisfies the "paragraph B" criteria. *See Statement of Errors*, pp. 11-13. In this regard, plaintiff argues that the

13

administrative law judge erred in "minimizing the fact that the plaintiff has been hospitalized three different times on suicide attempts." *Id*. at p. 12. Plaintiff equates these hospitalizations with episodes of decompensation. However, only one of plaintiff's hospitalizations lasted for an extended period of time. *See PAGEID* 67; 708-20 (hospitalization from November 15 until November 20, 2012); 748-51 (hospitalization from February 25 until March 5, 2013); 752-57 (hospitalization from March 25, 2013 to April 8, 2013). *See also PAGEID* 170-74 (February 6, 2013 opinion by Caroline Lewin, Ph.D., that plaintiff had not experienced any repeated episodes of decompensation, each of extended duration). The Court also notes that plaintiff has not argued (nor has she cited any evidence) that she satisfies the paragraph A criteria of Listings 12.04 or 12.06.

Plaintiff also argues that the administrative law judge erred in his credibility determination. *Statement of Errors*, pp. 14-17. Plaintiff specifically argues that the administrative law judge erred in discounting plaintiff's credibility in light of her three suicide attempts, the opinions of Drs. Fisher, Turner, Bartley, Reynolds, and Rudy, and because "the large amount of medical documents in the file support[s] that the Plaintiff has some very serious physical and mental conditions." *Id*. Plaintiff argues that it was error to find that her "complaints are disproportionate and not supported by the objective and substantial evidence of the record." *Id*. at p. 15. Plaintiff further argues that it was error to discount her credibility for "not want[ing] to undergo a very severe and complicated surgery"

14

and for not completing physical therapy because "she had to stop due to chronic low back pain." *Id*. at p. 16.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v.*

15

*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and her testimony at the administrative hearing, but found that plaintiff's subjective complaints and testimony were "not entirely credible." *PAGEID* 69-72. The administrative law judge evaluated the medical evidence, articulated the proper standard for evaluating a claimant's credibility, and dedicated four pages to the evaluation of plaintiff's credibility. The administrative law judge provided numerous reasons for discounting plaintiff's credibility, including, *inter alia*, a lack of objective medical evidence to support the extent of plaintiff's subjective complaints, the fact that plaintiff did not consistently complain of any psychologically based symptoms until 2012, the absence of disabling deficits in any area of mental functioning, the fact that plaintiff returned to work within two days of her work-related injury in 2002 and was laid off because no light duty work was available to her at that time, the assessments of examining medical sources who opined that plaintiff retains a sufficient functional capacity for work, the fact that plaintiff was able to go for extended periods of time without any prescription pain medication, the fact that plaintiff was discharged from a number of pain management programs due to noncompliance, and plaintiff's failure to use a spinal cord stimulator. *Id*. The administrative law judge's reasoning and analysis are supported by substantial evidence, as cited by the

administrative law judge.

Plaintiff also argues that the administrative law judge should not have considered, in discounting her credibility, plaintiff's resistance to risky surgery and failure to complete physical therapy when it increased her pain. It was not improper as a matter of law for the administrative law judge to consider that plaintiff refused surgery and failed to complete physical therapy. Even if error, however, any such error in this regard was harmless considering the remainder the administrative law judge's credibility evaluation and the deferential standard of review to which that evaluation is entitled. Notably, plaintiff has not challenged the overwhelming majority of the administrative law judge's credibility determination.

The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of his credibility determination. The analysis and credibility determination of the administrative law judge enjoy substantial support in the record. This Court will not – and indeed may not – revisit that credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Finally, plaintiff argues, without citing the record or any authority, that the administrative law judge erred in finding that the claimant could perform medium work without "address[ing] in the order what additional limitations he was applying to the medium RFC." *Statement of Errors*, p. 17. Plaintiff's argument in this regard is without merit. First, the administrative law judge's RFC

17

determination specifically sets forth the limitations found by him. *See PAGEID* 68. Second, the hypothetical questions posed by the administrative law judge to the vocational expert at the administrative hearing included the limitations found in the RFC determination. *PAGEID* 100-01. Plaintiff's argument in this regard is therefore without merit. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)(the administrative law judge may rely on the testimony of a vocational expert in response to a hypothetical question that accurately portrays the claimant's individual physical and mental impairments).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right

to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


April 13, 2015                                      *s/Norah McCann King*_____
                                              Norah M<sup>c</sup>Cann King
                                        United States Magistrate Judge